## WESTGATE *v.* ADAMS.

1. RECEIVERS—APPOINTMENT—COLLATERAL ATTACK.

In proceeding by receiver, who had been appointed to operate wholesale gasoline business of husband in suit for divorce, to oust defendants from control of stations because of their refusal to comply with consent order relative to such assets and business, defendants may not question the legality of the appointment of the receiver, as the appointment is not open to collateral attack.

2. JUDGMENT—ACCEPTANCE OF BENEFITS—ESTOPPEL.

Acceptance of benefits under a consent decree estops a party from attacking it where there is no claim of fraud in its procurement.

3. Appeal and Error—Consent—Estoppel.

    Parties who consented to method by which they could be dis-
    possessed of property may not complain of rights they may
    have waived when dispossession was sought in conformity to
    the consent order.

4. Same—Stipulations.

    Parties are at liberty to waive rights secured to them by rules
    of practice, or waive objections to pleading or to evidence or
    they can stipulate facts or confess judgment, but if they stipu-
    late to substitute methods of their own in place of essential
    rules of legal procedure, they cannot afterward claim the
    right to review.

Appeal from Kent; Hoffius (Cornelius), J. Sub-
mitted April 10, 1940. (Docket No. 97, Calendar No.
40,732.) Decided June 3, 1940. Rehearing denied
September 6, 1940.

Divorce proceeding between Bertha L. Westgate
and Elmore L. Westgate. On petition of plaintiff,
Fred G. Timmer was appointed receiver of the Direct
Refinery Stations. From orders relative to receiv-
er's control and possession of certain assets, defend-
ants Leroy Smith and Lyle R. Adams appeal. Af-
firmed.

*Earl Waring Dunn,* for plaintiff.

*Michael Garvey,* for defendants.

*Laurence W. Smith,* for receiver.

Sharpe, J. November 30, 1938, a decree of divorce
was rendered between Bertha L. Westgate as plain-
tiff and Elmore L. Westgate as defendant. The de-
cree of divorce awarded to plaintiff one-half of de-
fendant's title and interest in the "properties,
moneys, bank accounts, assets and business known
as the Direct Refinery Stations as of August 10, 1937,

and subsequent thereto, whether or not said business has continued to be and is now operated under that name, and in the wholesale gasoline business operated in connection with said Direct Refinery Stations or their successors." February 3, 1939, Fred G. Timmer of Grand Rapids was appointed receiver of the properties, moneys, bank accounts, gasoline filling stations, rolling equipment, licenses, leases or subleases known and operated as the Direct Refinery Stations business. The order appointing the receiver provided that the receiver "shall have all the title, and shall exercise, subject to the control of this court and consistently with the provisions of law, all the powers of a general receiver in equity * * * and in addition to the powers hereinbefore conferred, shall have power to operate the regular business of the defendant Elmore L. Westgate, and the Direct Refinery Stations and the wholesale gasoline business operated in connection with the Direct Refinery Stations." On February 17, 1939, orders were directed to Leroy Smith and Lyle R. Adams to show cause why the lease under which each held and occupied a gasoline station should not be cancelled, or in lieu thereof each be required to follow the instructions of the receiver and recognize his exclusive control in the operation of such station.

March 15, 1939, an interlocutory order was entered which provided that the receiver would continue the operation of all stations during the period of receivership, and that defendants Adams and Smith together with others should continue to operate their stations under the direction of the receiver. The order also provided, "Nothing in this order shall be construed as a final determination of any issue pertaining to title or property claims other than temporary possessory rights."

By stipulation the order of March 15, 1939, was

amended and an order entered April 29, 1939, which provided as follows: that the receiver is to continue the operation of all stations; that during the period of receivership, the defendants and others are to buy from the receiver; and that except for expulsion for failure to buy from the receiver all gasoline and oil and promptly pay for the same, no change in this arrangement shall be made except on petition to the court. Neither Smith nor Adams have filed a petition to change the arrangement.

June 9, 1939, the receiver filed a petition for an order to show cause why a writ of assistance should not issue against defendants for failure to comply with the order of March 15th as amended by the consent order of April 29th. The defendants filed separate answers to the order to show cause. Defendant Adams complains of the failure of the receiver to sell gasoline to him at the best price obtainable, and contends that proceedings by order to show cause are not the proper proceedings for dispossessing of his occupancy, ownership and title to property. Defendant Smith also filed an answer to the order to show cause, and contends that he is in possession of the premises by virtue of a five-year lease entered into in 1937 and that he does not withhold the premises unlawfully against the receiver.

The trial court took testimony in relation to the petition and answers and at the conclusion thereof entered the following order:

"It is the order of this court that Mr. Smith and Mr. Adams forthwith resume the making of purchases, accounting and reporting to the receiver, as set forth in the order of this court, of April 29th last and that both resume living up to the terms of the stipulation."

The writs of assistance were subsequently issued and defendants ejected from the property.

Defendants appeal and contend that the appointment of a receiver was unwarranted; that defendants were improperly ejected from their property; and that Bertha L. Westgate has no authority to file a bill requesting the court to decree and determine that the property in possession of defendants belongs to the receivership assets.

In our opinion defendants may not raise the question of the legality of the appointment of a receiver in this proceeding. The appointment of a receiver is not open to a collateral attack. The appeal in this case arose from the insistence of the receiver that defendants should comply with the requirements of the consent order of April 29, 1939, wherein it was agreed that defendants and others purchase their petroleum products from the receiver.

In *Burk* v. *Amos,* 262 Mich. 332, we said:

"The approval of the decree and the acceptance of benefits under it by counsel for both defendants estop the defendant Robert H. Amos from attacking it where no claim is made of fraudulent conduct on the part of the attorney who assumed to act for him."

See, also, *Hirschfeld* v. *Hirschfeld,* 242 Mich. 33; *Detroit Bar Ass'n* v. *Union Guardian Trust Co.,* 282 Mich. 216.

Defendants stipulated and consented to the order of April 29, 1939, directing them to buy from the receiver. By their stipulation it was agreed that defendant Westgate had a substantial interest in the gasoline stations; that the rights of the operators claiming adversely to the receiver should await final determination after a hearing on the merits; that the receivership included the stations operated by defendants; that the receiver is to continue the opera-

tion of the stations during the period of the receivership; that defendants would buy all their gasoline and oil from the receiver at the best prices obtainable; that all issues pertaining to title or property claims or rights are reserved until hearing on the merits; and that no change in the arrangements were to be made by the receiver or station operators during the pendency of the receivership except upon petition to the court.

It also appears that the action taken to dispossess defendants was in conformity with the consent order. Defendants having consented to the method by which they could be dispossessed may not now complain of rights they may have waived.

In *Harris* v. *Sweetland* (syllabus), 48 Mich. 110, this court held:

"Parties are at liberty to waive rights secured to them by rules of practice, and they may also waive objections to pleading or to evidence; they can stipulate facts or confess judgment. But if they stipulate to substitute methods of their own in place of essential rules of legal procedure, they cannot afterward claim the right to review."

The decree is affirmed, with costs to plaintiff.

Bushnell, C. J., and Potter, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.